[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

TOKUNBO BELLO )
)
)
_____ )
)
Plaintiff(s), )
)
v. )
CHICAGO TRANSIT AUTHORITY )
)
_____ )
)
Defendant(s). )

1:24-cv-10363
Judge Jeffrey I Cummings
Judge Young B. Kim
Cat 2 /IC/ RANDOM

**FILED**

OCT 15 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### <u>COMPLAINT OF EMPLOYMENT DISCRIMINATION</u>

1. This is an action for employment discrimination.

2. The plaintiff is TOKUNBO BELLO of the county of COOK in the state of ILLINOIS.

3. The defendant is CHICAGO TRANSIT AUTHORITY, whose street address is 567 W. LAKE ST., (city) CHICAGO (county) COOK (state) ILLINOIS (ZIP) 60661 (Defendant's telephone number) (312)-664-7200

4. The plaintiff sought employment or was employed by the defendant at (street address) 1702 E 103RD ST. (city) CHICAGO (county) COOK (state) IL (ZIP code) 60617

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.    The plaintiff [*check one box*]

    (a)  ☐  was denied employment by the defendant.

    (b)  ☒  was hired and is still employed by the defendant.

    (c)  ☐  was employed but is no longer employed by the defendant.

6.    The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _JUNE_ , (day) _14TH_ , (year) _2022_.

7.1    *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a)  The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐*has* ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

        (i)  ☐ the United States Equal Employment Opportunity Commission, on or about

            (month)_____ (day)_____ (year)_____.

        (ii)  ☒ the Illinois Department of Human Rights, on or about

            (month)_April_ (day)_12_ (year)_2023_.

    (b)  If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days.**

    It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and

    (a)  the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year)_____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month) _JULY_
(day) _16TH_ (year) _2024_.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☒ Yes    ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☒    the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month) _JULY_ (day) _22_ (year) _2024_ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

    (c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

    (d) ■ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

    (e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

    (f) ■ Religion (Title VII of the Civil Rights Act of 1964)

    (g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.    The defendant [*check only those that apply*]

    (a) ☐ failed to hire the plaintiff.

    (b) ■ terminated the plaintiff's employment.

    (c) ■ failed to promote the plaintiff.

    (d) ■ failed to reasonably accommodate the plaintiff's religion.

    (e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

    (f) ☐ failed to stop harassment;

    (g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

    (h) ■ other (specify): *APPLIED FOR OTHER POSITIONS*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

*BUS SERVICE SUPERVISOR TRAINING PROGRAM*
*MARCH 2024*
*BUS INSTRUCTOR I TRANING PROGRAM*
*AUGUST 2024*

13. The facts supporting the plaintiff's claim of discrimination are as follows:

_____

_____

_____

_____

_____

14. *[AGE DISCRIMINATION ONLY]* Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☒ Direct the defendant to promote the plaintiff.

(d) ☒ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐ Direct the defendant to (specify): _____

_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g)  ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h)  ☑  Grant such other relief as the Court may find appropriate.

*Tokunbo Bello*
(Plaintiff's signature)

TOKUNBO BELLO
(Plaintiff's name)

8339 S· CRANDON AU
(Plaintiff's street address)

(City) CHICAGO      (State) IL      (ZIP) 60617

(Plaintiff's telephone number) (773) – 844·0290

Date: 10/9/24

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

6

ANNEX

Enclosure with EEOC Notice of Closure and Rights (Release Date)

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 7/16/2024

To:  Tokunbo Bello
     8339 S. Crandon Avenue
     Chicago, IL  60617

                                        via email: tokunbobello23@gmail.com

                                        Charge No: 21B-2023-00121

EEOC Representative and email:          Sherice Galloway
                                        Manager / State, Local & Tribal
                                        sherice.galloway@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission:

Digitally Signed By: Amrith Kaur Aakre
7/16/2024

Amrith Kaur Aakre
District Director

Cc:

CHICAGO TRANSIT AUTHORITY
c/o  Seo Jang, Esq.
CTA Law Department
567 W. Lake Street, 6th Floor
Chicago, IL  60661

                    via email: sjang@transitchicago.com



**CHICAGO TRANSIT AUTHORITY**

1702 E 103RD Street
Chicago, Illinois 60617
**TEL** (773) 978-8000

Five Day Letter – No approved Leave

<u>**Via Certified Mail – 7021 1970 0000 4521 0319**</u>          07-12-2022
<u>**Return Receipt Requested and First Class Mail**</u>

Mr. Tokunbo Bello
8339 S. Crandon
Chicago, IL 60617

Dear Mr. Tokunbo Bello,

On 06-23-2022, you removed from service and referred to the Senior Manager for further case disposition. Your interview expressed that you were to report for your hearing on 07-12-2022 at 14:00. You failed to appear for that hearing. Thusly, you are considered Absent Without Official Leave (AWOL).

You are non-compliant with CTA's policy and procedures and are subject to disciplinary action.

You are directed to report to 103rd Bus Garage on 07-19-2022 at 14:00, for a hearing with your Union 241 Representative and the Senior Manager. **You are advised and specifically warned that failure to appear on the date indicated can result in your discharge by mail.**

Sincerely,

Malcolm Cole
Business Manager
103rd Street Garage

cc:     Badge # 39517
        Senior Manager
        Local ATU 241
        Employee Relations

ILLINOIS DEPARTMENT OF



# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

April 12, 2023

TOKUNBO BELLO
8339 S. CRANDON AVENUE
CHICAGO, IL 60617

Re:     Charge No.  2023CF0349
        TOKUNBO BELLO v. CHICAGO TRANSIT AUTHORITY

Dear TOKUNBO BELLO:

You filed the above captioned charge, but we have not been able to begin an investigation because you did not return the perfected charge (signed under oath or affirmation) as requested. We have attempted to contact you unsuccessfully.  If you wish to proceed with this investigation, you must return the enclosed charge with your signature and date.  (If you sign with a notary, please remember, you must sign the charge in the presence of the notary public.  The notary must also sign, date and notarize the charge with a rubber stamp notary seal.)

**If you do not wish to proceed, please sign and return the enclosed withdrawal form immediately.**  This will release you from any further obligations pertaining to this matter.

**Please contact me immediately at (217) 785-5112 to let me know your intentions concerning this matter.**  If I am not available when you call, leave your name, the charge number and a message indicating your intentions, along with a telephone number where you can be reached during business hours.

If you do not contact me or return the signed charge within 30 days of your receipt of this letter, the Department will dismiss your charge for your failure to proceed.

Sincerely,

Shannon Hemberger
Human Rights Investigator

Enclosures:    Charge
               Withdrawal Form
               EEOC Letter

FTP UP 30 Day Ltr.docm
(Rev. 01-2022)



**CHICAGO TRANSIT AUTHORITY**

Tuesday, January 2, 2024
Badge #: 39517

Tokunbo Bello
8339 South Crandon
Chicago, IL 60617

You are receiving this letter because the Chicago Transit Authority (the "CTA") has suspended its Mandatory COVID-19 Vaccination Policy for All CTA Employees (the "Policy") effective December 28, 2023, and CTA records show that you were discharged for allegedly violating the Policy, or you resigned or retired in lieu of complying with the Policy. CTA is offering reinstatement to vacant budgeted and approved positions for those individuals who were discharged by the CTA for allegedly violating the Policy or resigned or retired in lieu of complying with the Policy and who held the open position at the time of their separation from the CTA.

There is currently an open budgeted position to which you are eligible for reinstatement, provided that you comply with each of the following conditions:

A. You must contact the CTA HR designee designated below within 7 business days to schedule an appointment to take place within 10 days to begin the reinstatement process. If you fail to schedule an appointment or fail to appear at the CTA for the appointment you will be placed at the bottom of your seniority list. If you are contacted a second time and fail to schedule an appointment or fail to appear at the CTA for the appointment, this reinstatement offer terminates.

B. You must be examined by Concentra, CTA's third-party medical service provider, and found fit and pass all related assessments to perform the duties of the position for which reinstatement is offered. Should Concentra find you unfit to return to work in your position, you will be treated in accordance with the terms of your union's collective bargaining agreement with the CTA, if you are union represented. If you are not union represented, in the event Concentra finds you unfit but your personal physician finds you fit, you will be referred for an evaluation by an agreed upon third party medical provider, whose evaluation will control.

C. You must pass all assessments for the position for which you are being offered reinstatement and be fully qualified for that position.

D. You must complete a criminal background check including submitting your fingerprints for an F.B.I database search and review. You must comply with the CTA's background check policy and also not have been convicted following your separation from CTA of any felony reasonably related to the performance of your duties at CTA.

E. You must successfully pass all required drug and alcohol testing and all training required by CTA in accordance with CTA's standard requirements for persons returning to work from an extended leave.

F. You must truthfully and accurately answer all questions during the reinstatement process.

G. You must successfully complete all training regularly required of CTA employees absent for the length of time of your separation from CTA, including new employee training.

Should you fail to meet any of the above conditions, you will not be reinstated; provided, however, that in the event Concentra finds you unfit but your personal physician finds you fit, you will be referred for an evaluation by an agreed upon third party medical provider, whose evaluation will control.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

# 23M0711.10

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2023CF0349 |
| ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Tokunbo Bello | (773) 844-0290 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 8339 S. Crandon Ave. | Chicago, IL 60617 | MM / DD / YYYY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area |
|---|---|---|
| Chicago Transit Authority | | (888) 968-7282 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 567 W. Lake St. | Chicago, IL 60661 | Cook |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Religion      National Origin | 01/21/2022      07/28/2022 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

<u>S E E   A T T A C H E D</u>

Page 1 of 4

DCK

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure. the undersigned certifies that the statements set forth in this instrument are true and correct. except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true. [735 ILCS 5 1-109]

X_____   ___/___/___
SIGNATURE OF COMPLAINANT      DATE

EEO-5 FORM (Rev. 5/2022-INT)                           RETURN THIS COPY

Case: 1:24-cv-10363 Document #: 1 Filed: 10/15/24 Page 12 of 38 PageID #:12

Charge Number: 2023C( +9
Complainant: Tokunbo Bello
Page 2 of 4

I.  A.  **ISSUE/BASIS**
    **FAILURE TO PROMOTE – JANUARY 21, 2022, DUE TO MY RELIGION**

    B.  **PRIMA FACIE ALLEGATIONS**

        1. My religion is Islam.

        2. I began my employment with Respondent on June 7, 2001. My performance as a bus operator met Respondent's expectations.

        3. On January 21, 2022, I applied for the position of Bus Instructor I-Training Program. Respondent did not consider my application.

        4. Similarly situated employees who were not of Islamic faith, were given preferential consideration under similar circumstances.

II.  A.  **ISSUE/BASIS**
     **FAILURE TO PROMOTE – JANUARY 21, 2022, DUE TO MY NATIONAL ORIGIN**

     B.  **PRIMA FACIE ALLEGATIONS**

        1. My national origin is Nigeria.

        2. I began my employment with Respondent on June 7, 2001. My performance as a bus operator met Respondent's expectations.

        3. On January 21, 2022, I applied for the position of Bus Instructor I-Training Program. Respondent did not consider my application.

        4. Similarly situated employees who were not from Nigeria, were given preferential consideration under similar circumstances.

III.  A.  **ISSUE/BASIS**
      **FAILURE TO ACCOMMODATE– JUNE 14, 2022, DUE TO MY RELIGION**

      B.  **PRIMA FACIE ALLEGATIONS**

        1. My religion is Islam.

        2. I have a sincere religious belief which conflicts with Respondent's COVID-19 vaccine requirement.

        3. On September 24, 2021, I submitted paperwork requesting a religious exemption from Respondent's Covid-19 Vaccine Requirement. Respondent did not respond to my request, nor did they engage in any interactive process to discuss alternatives.

**RETURN THIS COPY**

Charge Number: 2023C( ) -9
Complainant: Tokunbo Bello
Page 3 of 4

4. On June 14, 2022, Respondent removed me from service for failing to comply with its Covid-19 Vaccine Requirement.

5. Respondent failed to provide any reasonable accommodation which would have permitted me to perform the essential functions of my job.

IV.  A.  ISSUE/BASIS
SUSPENSION – JUNE 14, 2022, DUE TO MY RELIGION

B.  PRIMA FACIE ALLEGATIONS

1. My religion is Islam.

2. I began my employment with Respondent on June 7, 2001. My performance as a bus operator met Respondent's expectations.

3. On June 14, 2022, Respondent removed me from service for failing to comply with its Covid-19 Vaccine Requirement.

4. Similarly situated employees who were not of Islamic faith, were not removed from the schedule under similar circumstances.

V.  A.  ISSUE/BASIS
SUSPENSION – JUNE 14, 2022, DUE TO MY NATIONAL ORIGIN

B.  PRIMA FACIE ALLEGATIONS

1. My national origin is Nigeria.

2. I began my employment with Respondent on June 7, 2001. My performance as a bus operator met Respondent's expectations.

3. On June 14, 2022, Respondent removed me from service for failing to comply with its Covid-19 Vaccine Requirement.

4. Similarly situated employees who were not from Nigeria, were not removed from the schedule under similar circumstances.

VI.  A.  ISSUE/BASIS
DISCHARGE – JULY 28, 2022, DUE TO MY RELIGION

B.  PRIMA FACIE ALLEGATIONS

1. My religion is Islam.

RETURN THIS COPY

Charge Number: 2023C( )+9
Complainant: Tokunbo Bello
Page 4 of 4

2. I began my employment with Respondent on June 7, 2001. My performance as a bus operator met Respondent's expectations.

3. On July 28, 2022, Respondent discharged me for failing to comply with its Covid-19 Vaccine Requirement.

4. Similarly situated employees who were not of Islamic faith, were not discharged under similar circumstances.

VII. A. ISSUE/BASIS
DISCHARGE – JULY 28, 2022, DUE TO MY NATIONAL ORIGIN

B. PRIMA FACIE ALLEGATIONS

1. My national origin is Nigeria.

2. I began my employment with Respondent on June 7, 2001. My performance as a bus operator met Respondent's expectations.

3. On July 28, 2022, Respondent discharged me for failing to comply with its Covid-19 Vaccine Requirement.

4. Similarly situated employees who were not from Nigeria, were not discharged under similar circumstances.

RETURN THIS COPY

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

TOKUNBO BELLO,

                COMPLAINANT,

AND

CHICAGO TRANSIT AUTHORITY,

                RESPONDENT.

CHARGE NO.    2023CF0349
EEOC NO.      21BA30121

### NOTICE OF DISMISSAL

**For Complainant**

Tokunbo Bello
8339 S. Crandon Ave.
Chicago, IL 60617

**For Respondent**

Seo Jang
Chicago Transit Authority Law
Department
567 W. Lake St.
6th Floor
Chicago, IL 60661

DISMISSAL / NOTICE DATE: January 5, 2024

The Director of the DEPARTMENT OF HUMAN RIGHTS (Department) has entered the findings identified in the in the enclosed investigation report.

### DISMISSAL

YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is a **LACK SUBSTANTIAL EVIDENCE** in support of the allegation(s) identified in the enclosed investigation report **(see investigation report)**.

Accordingly, pursuant to Section 7A-102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations, (56 Ill. Adm. Code. Chapter II, 2520.560) the charge is HEREBY DISMISSED

### PROCEDURE:

1. If Complainant disagrees with this action, Complainant may:

    a. REQUEST FOR REVIEW: Seek review of this dismissal before the Illinois Human Rights Commission (Commission), by filing a "Request for Review" with the Commission by the request for review filing deadline date below. Respondent will be notified by the Commission if a Request for Review is filed. You can file the Request for Review by email, mail, personal delivery, or fax to:

**STATE OF ILLINOIS**
**HUMAN RIGHTS COMMISSION**

IN THE MATTER OF:

TOKUNBO BELLO,                                    )
                                                 )
                                                 )
                    COMPLAINANT,     )            CHARGE NO.    2023CF0349
                                                 )            EEOC NO.     21BA30121
AND                                              )
                                                 )
CHICAGO TRANSIT AUTHORITY,          )
                                                 )
                                                 )
                                                 )
                                                 )
                                                 )
                                                 )
                    RESPONDENT.      )

**REQUEST FOR REVIEW FORM**

| For Complainant | For Respondent |
|---|---|
| Tokunbo Bello | Seo Jang |
| 8339 S. Crandon Ave. | Chicago Transit Authority Law |
| Chicago, IL 60617 | Department |
| | 567 W. Lake St. |
| | 6th Floor |
| | Chicago, IL 60661 |

**TO:** TOKUNBO BELLO,

**DISMISSAL DATE: January 5, 2024**

**REQUEST FOR REVIEW FILING DEADLINE DATE: April 9, 2024**

> ⚠ If you do not file a Request for Review by the filing deadline date, your case will be over. ⚠

I am asking the Illinois Human Rights Commission (Commission) to review the dismissal of my charge by the Illinois Department of Human Rights (Department).

My Current Address (please print clearly):

Street Address_____ Apt/Unit # _

City_____ State_____ Zip_____

Email Address*_____ Phone Number (_____)_____
* If you provide an email address, the Commission will send all future documents to you only by email. You should use an email address that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notices, or documents from other parties.

Page 2
Request for Review
Charge No. 2023CF0349

## How To Fill Out This Form

In the space below, you can explain why your charge should not have been dismissed. If you need more space, write on the back of this form or attach extra pages. You can include supporting materials and evidence with this Request for Review. The form, extra pages, and supporting materials and evidence must not be longer than **45 pages**.

You can look at the Department's investigation file to help you prepare your Request for Review. Call the Department at (312) 814-6262 to set up a time to look at the file. You will need to call at least 3 business days before you want to look at the file. Do not wait until the last minute to ask to look at the file.

SIGNATURE

DATE

## How To File This Form

You must file the Request for Review **by the filing deadline date** on the first page of this form. You can file the Request for Review by email, mail, personal delivery, or fax to:

|              |                                      |
|--------------|--------------------------------------|
| Mail / Delivery: | Illinois Human Rights Commission |
|              | Michael A. Bilandic Building         |
|              | 160 N. LaSalle Street, Suite N-1000  |
|              | Chicago, IL 60601                    |
| Email:       | HRC.News@illinois.gov                |
| Fax:         | (312) 814-6517                       |

After you file your Request for Review, you **cannot** give the Commission more information or supporting materials. If you need more time to complete your Request for Review, you can file a motion for extension of time. You must file your motion by the filing deadline date on the first page of this form.

For more information about how to fill out and file this form, go to the Commission's website at hrc.illinois.gov/rules/request-for-review.

HB1509/HB59 HRC R/R 10/10/2023

---

Michael A. Bilandic Building, 160 North LaSalle Street, Suite N-1000 Chicago, Illinois 60601 Phone (312) 814-6269 TTY (866) 832-2298 Fax (312) 814-6517

Jefferson Terrace, 300 West Jefferson Street, Suite 108 Springfield, Illinois 62702 Phone (217) 785-4350 TTY (866) 832-2298 Fax (217) 524-4877

**Page 2**
**Notice of Dismissal**
**Charge No. 2023CF0349**

Illinois Human Rights Commission
Michael A. Bilandic Building
160 N. LaSalle Street, Suite N-1000
Chicago, IL 60601
Email: HRC.News@illinois.gov
Fax: (312) 814-6517

**REQUEST FOR REVIEW FILING DEADLINE DATE: April 9, 2024**

You may review or request a copy of your investigation file, after the Department's completion of the investigation, to help prepare your Request for Review. The Department will provide you with a specific date and time for you to review your investigation file. Files larger than fifty (50) pages will be sent to an outside vendor for copying. The Department is not responsible for the fees charged by the vendor. Call (312) 814-6262 to make arrangements.

**OR**

b. CIVIL ACTION: Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed. If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings. The Appellate Courts in Watkins v. Office of the State Public Defender, __ Ill. App. 3d __, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, __ Ill. App. 3d__, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Act against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

2. For Equal Employment Opportunity Commission **(EEOC) cross-filed charges ONLY**:

Complainant has the right to request that the EEOC perform a Substantial Weight Review (SWR) if:
a. An EEOC charge number is cited above;
**AND**
b. The charge alleges violations of federal laws enforced by the EEOC;
**AND**
c. Complainant submits to EEOC a written and signed request for a Substantial Weight Review within fifteen (15) days of either:

i. Receipt of this notice, if Complainant does NOT file a "Request for Review" with the Human Rights Commission (HRC);
**OR**
ii. Receipt of the HRC's final notice/order if Complainant filed a "Request for Review" with the HRC. (This means that if you made a "Request for Review" with the HRC, you must wait to request a SWR from EEOC until after you receive notice of resolution of the HRC review, which may take many months up to a year or more).

**EEOC will not honor any request for a Substantial Weight Review that does not meet requirements (a), (b) and (c) above. If you have a pending "Request for Review" with HRC and you make a request for SWR with EEOC before you receive a final notice/order from the HRC, you will be asked to re-submit your request for SWR after you receive notice of resolution from the HRC.**

**Page 3**
**Notice of Dismissal**
**Charge No. 2023CF0349**

If you choose to file a request for a Substantial Weight Review, and the allegation(s) occurred in one of the following counties: **Alexander, Bond, Calhoun, Clinton, Greene, Jackson, Jersey, Macoupin, Madison, Monroe, Perry, Pulaski, Randolph, St. Clair, Union, or Washington**, you may email your request for a Substantial Weight Review to, or mail it to:

> EEOC
> Attn: State, Local, and Tribal Programs Manager
> Robert A. Young Federal Building
> 1222 Spruce St., Rm 8.100,
> St. Louis, MO 63103.
> Email: Joseph.Wilson@eeoc.gov

For allegation(s) that occurred in **all other Illinois counties**, you may email your request for a Substantial Weight Review, or mail it to:

> EEOC
> Attn: State, Local, and Tribal Programs Manager
> John C. Kluczynski Federal Building
> 230 South Dearborn Street, Suite 1866
> Chicago, Illinois 60604.
> Email: Sherice.Galloway@eeoc.gov

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

DEPARTMENT OF HUMAN RIGHTS
James L. Bennett
Director

NOD LSE Rev 11/01/2023

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | **TOKUNBO BELLO** | **IDHR No.:** | **2023CF0349** |
| **Respondent:** | **CHICAGO TRANSIT AUTHORITY** | **EEOC No.:** | **21BA30121** |

**Investigator:** SMH Supervisor: *Krista Hrusok /SCS* Date: *12/26/23*

### Issue/Basis:

A. Failure to Promote/Religion, Islam
B. Failure to Promote/National Origin, Nigeria
C. Failure to Accommodate/Religion, Islam
D. Suspension/Religion, Islam
E. Suspension/National Origin, Nigeria
F. Discharge/Religion, Islam
G. Discharge/National Origin, Nigeria

### Finding:

A. Lack of Substantial Evidence
B. Lack of Substantial Evidence
C. Lack of Substantial Evidence
D. Lack of Substantial Evidence
E. Lack of Substantial Evidence
F. Lack of Substantial Evidence
G. Lack of Substantial Evidence

### Jurisdiction:

Alleged violations:
Charge filed:

A & B. January 21, 2022
C, D & E. June 14, 2022
F & G. July 28, 2022

Charge perfected:
Amendments:
Number of employees:

April 17, 2022
None
9,222

### Verified Response:

Note: Pursuant to Public Act 100-0492, a Verified Response ("VR") is not required for a charge filed on or after September 8, 2017, and one was not provided.

### Employment Data:

Respondent's 2021 EEO report shows that they have 9,222 total employees **(Exhibit A)**. Of these, 4,229 work in Complainant's job classification of Service-Maintenance. Respondent does not track religion or national origin for their employees.

### Uncontested Facts:

1. Respondent is a Municipal Corporation who provides mass transit to the Chicago, Illinois metropolitan area.

2. Complainant is religion, Islam and national origin, Nigeria.

3. Complainant began working for Respondent June 7, 2001, and was a Bus Operator **(Exhibit B)** for his entire employment.

Charge No. 2023CF0349
Page 17 of 17

I.      Respondent's Bus Operations Work Record Review Criteria

J.      Complainant's Interview Details September 1, 2021

K.      Respondent January 26, 2022 Request for Additional Info from Complainant

L.      Email from Complainant to EEO Diversity on February 2, 2022

M.      Complainant Religious Exemption Request Denial

N.      Respondent Mandatory COVID-19 Vaccination Policy Next Steps

O.      Emails between Complainant and EEO Diversity on June 27, 2022

P.      Complainant's Interview Details June 14, 2022

Q.      Complainant's Interview Details June 7, 2022

R.      Complainant Report to Manager June 7, 2022

S.      Complainant's Interview Details July 28, 2022

T.      Complainant's Interview Details June 23, 2022

IRSHELL
Rev. 11/2021

Charge No. 2023CF0349
Page 2 of 17

4.      Complainant applied for a Bus Instructor I Training program on January 21, 2022 (**Exhibit C**).

5.      On September 3, 2021, Respondent issued a Mandatory COVID-19 Vaccination policy for all Respondent employees (**Exhibit D**).

6.      Complainant applied for a request for religious exemption related to getting the COVID 19 vaccine on September 25, 2021 (**Exhibit E**).

7.      Complainant was discharged on July 28, 2022 (**Exhibit F**).

**Complainant's Allegations-Counts A & B**:

Complainant alleges that Respondent failed to promote him to their Bus Instructor I Training program on January 21, 2022, due to his religion, Islam and his national origin, Nigeria. Complainant alleges that other employees not of his religion and national origin were promoted, but he does not recall any names.

**Respondent's Defenses-Counts A & B:**

Respondent's articulated non-discriminatory reason for not promoting Complainant to the Bus Instructor I Training program was that he did not qualify for the position for multiple reasons, so he was not interviewed. Respondent affirms that no other employees from Complainant's work location were promoted to the Bus Instructor I Training program and they do not have the religion or national origin for the employees that did apply.

**Investigation Summary-Counts A & B:**

A.      **Complainant's Evidence.**

1.      Complainant stated that he has never been promoted at Respondent before. Complainant stated that he has applied for other promotions in the past and anytime he applies for a position, someone is always charging him for something to give Respondent a reason not to promote him.

2.      Complainant stated that whenever a position comes open at Respondent, they post it on the bulletin. Complainant stated that employees that want to apply will fill out the form at the window clerk and sign it, then turn it into the manager. Complainant stated that the manager is supposed to go over your work record with you when you turn in the application and let you know if you are qualified. Complainant stated that this never happened to him except one time in 2017 and the manager said he could not be recommended for the position because of an accident on his record.

3.      Complainant stated that he does have several disciplines and a lot of the time Respondent charged him with things they aren't supposed to charge him with. Complainant stated he has filed grievances and gotten many of these removed from his record.

4.  Complainant stated that on January 21, 2022, he applied for a Bus Instructor I Training position **(Exhibit C)**. Complainant stated that the opening was posted at the garage bulletin with the window clerk, and he applied the same day.

5.  Complainant stated that he was qualified for the position because he had no suspensions, no charge of complaint, no accidents, no procedure violations and no behavior violations. Documentation of the job posting for the Bus Instructor I Training position notes, "Employees Eligible to Apply: All permanent Chicago Transit Authority employees in the Operations Division who are currently qualified as an appointed Bus Service Supervisor, appointed Bus Clerk, actively participating as a Pool Bus Service Supervisor or School Bus Clerk," **(Exhibit G)**. Complainant stated that he agrees that he did not hold any of these positions.

6.  Complainant stated that he found out he did not get the position when Respondent never responded. Complainant stated that he was never called or emailed. Complainant stated that he felt like his application was never processed because he never got a response.

7.  Complainant stated that several applicants got the position, but he doesn't remember any names.

8.  Complainant stated that he made Respondent aware of his religion over 10 years ago when he requested holidays off that he celebrates as a Muslim. Complainant stated that he remembers he made requests for these holidays to Anthony Beck ("unidentified"), former General Manager ("Beck"), on June 4, 2019 and May 14, 2021.

9.  Complainant stated that he believes he was not promoted due to his religion because one time he filed a grievance and talked to Tanno Mohammed (Islam, unidentified), Union Vice President ("Mohammed"), and he told him, "You know you aren't getting these positions because you're Muslim," and he said he had been through the same thing. Complainant did not recall a date when Mohammed said this to him.

10. Complainant stated that he made Respondent aware of his national origin because other employees would often ask about his accent, and he would tell them where he was from.

11. Complainant stated that he believes he was not promoted due to his national origin because in or about March 2013, Antonio Payten (unidentified bases), Manager ("Payten"), said to him, "You think you are going to come from Africa and become a Supervisor or Manager, that ain't happening."

Charge No. 2023CF0349
Page 4 of 17

B.    **Respondent's Evidence.**

1. Van Johnson (Christian, United States), Manager of Employee Relations ("Johnson"), stated that Respondent does have and practices nondiscrimination policies. Respondent's Discrimination, Harassment, Bullying and Retaliation Complaints Policy **(Exhibit H)**, prohibits discrimination due to any protected basis, including national origin and religion.

2. Valant Wright (Baptist, United States), Senior Manager of 103rd Street Garage ("Wright"), stated that Respondent's promotional practice is that they will receive an employee application from a job posting that has been posted throughout the garage. Once the posting closes, the Managers go through the applications and decide who is eligible and who is not eligible. They give both stacks to the Senior Manager and they verify that all in the stacks are eligible or not eligible and then after that is verified, all eligible applications would go to the training instruction department.

3. Wright stated that employee applicants that are ineligible are usually not notified.

4. Wright stated that there were multiple openings for the Bus Instructor I Training position when Complainant applied in January 2022.

5. Wright stated that there is a job description for the posting and it states, "Employees Eligible to Apply: All permanent Chicago Transit Authority employees in the Operations Division who are currently qualified as an appointed Bus Service Supervisor, appointed Bus Clerk, actively participating as a Pool Bus Service Supervisor or School Bus Clerk," **(Exhibit G).**

6. Wright stated that another requirement for applicants under Respondent's Bus Operations Work Record Review Criteria was that they must meet Level II criteria which means that candidates eligible for promotion must have no suspension, no corrective case interviews, no chargeable complaints, no accidents, no more than one sick book entry, no misses/tardies, no safety violations, no procedural violations and no behavioral violations for 12 months prior to the date of review of the application **(Exhibit I).**

7. Wright stated that Complainant's application was received, and he followed the correct procedures to be considered for the position, but he did not meet the criteria because he had not been in a position as a Bus Service Supervisor, appointed Bus Clerk, actively participating as a Pool Bus Service Supervisor or School Bus Clerk, as required in the posting. Complainant was not an approved Supervisor, and he also had a procedural violation for failure to report an incident after making contact to a customer's left foot with a ramp, while operating the ramp on August 25,

Charge No. 2023CF0349
Page 5 of 17

2021 **(Exhibit J)**. Wright stated that Complainant's application was received by her, and Johnson and both of their reviews determined that Complainant was ineligible **(Exhibit C)**.

8. Wright stated that Complainant was not interviewed for the job because he did not meet the minimum requirements.

9. Wright stated that Respondent affirms that no other employees from Complainant's work location were promoted to the Bus Instructor I Training program and they do not have the religion or national origin for the employees that did apply[1].

10. Wright stated that Respondent denied that they have any record of a former or current employee named "Antonio Payten". Respondent further asserted that no one named Antonio Payten, nor anyone with a similar name was involved in the decision to not interview Complainant for the promotion or promote Complainant.

### C. Complainant's Rebuttal.

1. Complainant did not provide any additional information other than what was previously identified in Complainant's section.

### Analysis-Counts A & B:

Complainant alleges that Respondent failed to promote him to their Bus Instructor I Training program on January 21, 2022, due to his religion, Islam and his national origin, Nigeria. Respondent's articulated non-discriminatory reason for not promoting Complainant to the Bus Instructor I Training program was that he did not qualify for the position for multiple reasons, so he was not interviewed.

Documentation shows that the job posting for the Bus Instructor I Training position notes, "Employees Eligible to Apply: All permanent Chicago Transit Authority employees in the Operations Division who are currently qualified as an appointed Bus Service Supervisor, appointed Bus Clerk, actively participating as a Pool Bus Service Supervisor or School Bus Clerk." It is uncontested that Complainant has not held any of these positions at Respondent. Respondent further affirms that Complainant had a violation on his record that made him further ineligible for the position. Complainant agrees that he did have prior discipline on his record, although he alleges that anytime an open position came up, Respondent would find something to discipline him for.

---

[1] In a request for further information sent to Respondent on October 27, 2023, staff requested Respondent provide names, documentation and protected categories for the individuals hired into the Bus Instructor I Training Program in January 2022. On November 20, 2023, Respondent denied providing any documentation on the individuals that were hired citing that they object to this request as none of the individuals hired at this time were assigned to Complainant's work location. On December 1, 2023, staff sent a second request to Respondent for this documentation and also made a phone call to Respondent's representative on December 1, 2023, and reiterated that the comparative data was relevant and requested that Respondent provide this. Respondent's representative notified staff that Respondent would not be providing this documentation as it was not relevant because Respondent does not have the protected categories for the requested employees, since they do not track this information, and Complainant was denied an interview for the promotion because he was ineligible due to lack of qualifications.

Charge No. 2023CF0349
Page 6 of 17

Respondent has provided further documentation of their Bus Operations Work Record Review Criteria, which indicates candidates eligible for promotion must have no procedural violations in the previous 12 months. Documentation shows that Complainant's procedural violation further disqualified him from being interviewed for the position.

It is inappropriate for the Department to act as a super-personnel department that reexamines an entity's business decisions in cases where discrimination is alleged. Respondent is entitled to make employment decisions based on its reasonable belief of facts surrounding the situation. The correctness of the reason is not important, as long as there was a good faith belief by Respondent in its decision. There is no indication from the Department's investigation that Respondent was making anything other than a good faith decision based on its reasonable belief of the facts surrounding the situation.

Respondent has denied providing information or documentation on comparatives; however, Complainant has not named, nor has the investigation revealed an employee not in Complainant's protected categories that was treated better under similar circumstances.

## Findings and Conclusion-Counts A & B:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent followed their policies when determining that Complainant was not eligible to be interviewed for the Bus Instructor I Training position, and it is uncontested that Complainant did not hold any of the positions that were required in the job posting in order to be eligible for the position. Complainant has not provided sufficient evidence to link his failure to promote to his religion or national origin.

## Complainant's Allegations-Count C:

Complainant alleges that Respondent failed to accommodate him on June 14, 2022, due to his religion, Islam, when Respondent did not respond to his COVID-19 vaccine requirement exemption request.

## Respondent's Defenses-Count C:

Respondent alleges that they denied Complainant's request and their articulated non-discriminatory reason for denying Complainant's COVID-19 vaccine mandate exemption request, was that they determined his request did not substantiate a sincerely held religious belief or moral conviction that conflicted with Respondent's requirement that all employees be fully vaccinated against COVID-19.

## Investigation Summary-Count C:

    A.    **Complainant's Evidence.**

        1.    See Complainant's Evidence – Counts A-B.

2. Complainant stated that on September 25, 2021, he submitted a request for exemption from the COVID-19 vaccine mandate (Exhibit E). He completed Respondent's form for this and sent it to the EEO department.

3. Complainant stated that he never received any response to his request. Complainant never received any requests for additional information, and he even emailed his request again at some point, although he does not recall the date.

4. Complainant stated that he is not aware of any policy that Respondent has for accommodations or for vaccine exemptions.

5. Complainant stated that he believes his COVID-19 vaccine exemption request was denied because of his religion, because Respondent didn't even give him any reason for denying it. If his accommodation was denied, he was supposed to get a response.

6. Complainant stated that because his COVID-19 vaccine exemption request was denied, he eventually got suspended.

B. **Respondent's Evidence.**

1. See Respondent's Evidence – Counts A-B.

2. Johnson stated that on September 3, 2021, Respondent announced that all employees would be required to provide proof that they are fully vaccinated for COVID-19 by October 25, 2021 (Exhibit D).

3. Johnson stated that Complainant's religious accommodation for exemption from Respondent's COVID-19 vaccine mandate, was received on or about December 14, 2021 (Exhibit E) and had been signed by Complainant on September 25, 2021.

4. Johnson stated that he was part of the committee that voted on religious accommodation requests related to the COVID-19 vaccine mandate.

5. Johnson stated that when making a determination on the accommodation or exemption requests, it could be stated various ways, but the most approved reason was if an employee said they couldn't take the vaccine because it was made from fetal cells and their religion was pro-life. There was no formal policy on the vaccine exemptions, and they were determined on a case-by-case basis. Johnson stated that the decision was not based on religion and no religion was exempt or unexempt.

6. Johnson stated that after receiving Complainant's initial request for COVID-19 vaccine exemption (Exhibit E), Respondent reached out to Complainant for additional information as part of their interactive process on or about January 26, 2022 (Exhibit K). Documentation of their email to

Charge No. 2023CF0349
Page 8 of 17

Complainant shows that the email requested "as part of the interactive process, please see the attached document and respond accordingly within 7-calendar days." The document attached requested information explaining the connection between Complainant's sincerely held religious belief and his refusal to take the COVID-19 vaccine.

7.     Johnson stated that Complainant replied on February 2, 2022, but he only provided the initial request again and did not provide any new information **(Exhibit L)**.

8.     Johnson stated that after carefully considering Complainant's request and all information submitted, they denied Complainant's religious accommodation request **(Exhibit M)**, after determining that his request did not substantiate a sincerely held religious belief or moral conviction that conflicted with Respondent's requirement that all employees be fully vaccinated against COVID-19.

9.     Johnson stated that on or about May 5, 2022, Respondent attempted to inform Complainant of the denial via e-mail but there was an issue with Complainant's denial notification being sent to the wrong e-mail. Documentation shows that Complainant's notification of the denial was sent to tokunbobellow23@gmail.com which contained a typo with how Complainant's last name was spelled, and Complainant's correct e-mail address was tokunbobello23@gmail.com **(Exhibit M)**. In this email, Respondent also provided their Mandatory COVID-19 Vaccination Policy-Next Steps **(Exhibit N)**, which required being fully vaccinated against COVID-19 and submitting proof of full vaccination.

10.    Johnson stated that on or about June 27, 2022, Complainant reached out to Respondent's EEO Diversity office by e-mail and told them he was informed by his work location that his religious exemption to the COVID-19 vaccine mandate was denied on May 2, 2022 **(Exhibit O)**. In response to this email, the same day on June 27, 2022, Respondent sent Complainant the May 5, 2022, email containing the denial letter **(Exhibit O)**, and Respondent's Mandatory COVID-19 Vaccination Policy-Next Steps.

11.    Johnson indicated that 48 religious accommodation requests related to the COVID-19 vaccination policy were granted and 371 were denied. Respondent denied providing documentation on other employees that were approved or denied for the COVID-19 vaccine exemption requests[2].

---

[2] In a request for further information sent to Respondent on October 27, 2023, staff requested Respondent provide names, documentation and protected categories for other applicants for religious exemption of the COVID-19 vaccine. On November 20, 2023, Respondent denied providing any documentation on other employees who requested vaccine exemption citing that they object to this request as burdensome and irrelevant and stated that Respondent does not maintain this information in the manner assumed by IDHR. On December 1, 2023, staff sent a second request to Respondent for this documentation and also made a phone call to Respondent's representative on December 1, 2023, and reiterated that the comparative data was relevant and requested that Respondent provide this. Respondent's representative notified staff that Respondent would not be providing this documentation as it was not

Charge No. 2023CF0349
Page 9 of 17

### C.    Complainant's Rebuttal.

1.    Complainant did not provide any additional information other than what was previously identified in Complainant's section.

### Analysis-Count C:

Complainant alleges that Respondent failed to accommodate him on June 14, 2022, due to his religion, Islam, when Respondent denied his COVID-19 vaccine requirement exemption request. Respondent's articulated non-discriminatory reason for denying Complainant's COVID-19 vaccine mandate exemption request, was that they determined his request did not substantiate a sincerely held religious belief or moral conviction that conflicted with Respondent's requirement that all employees be fully vaccinated against COVID-19.

Documentation shows that on September 3, 2021, Respondent announced that all employees would be required to provide proof that they are fully vaccinated for COVID-19 by October 25, 2021. It is uncontested that Complainant submitted a religious accommodation or COVID-19 vaccine exemption request in late 2021. Complainant alleges that he never received any response to this request. Respondent affirms and documentation shows that Complainant was sent a request for further information on January 26, 2022, and he responded to this on February 2, 2022, by submitting his original request and no additional information as requested by Respondent.

Complainant alleges that he never received any response to his request. Documentation shows that Respondent did initially send Complainant's denial to the wrong e-mail. Complainant sent an e-mail inquiring about his denial on June 27, 2022, and Respondent sent the original denial and their Mandatory COVID-19 Vaccination Policy-Next Steps the same day.

Respondent affirms that Complainant's request was denied because they determined that his request did not substantiate a sincerely held religious belief or moral conviction that conflicted with Respondent's requirement that all employees be fully vaccinated against COVID-19. Respondent affirms that the main reason that exemption requests were approved, was if employees stated that they were not able to get the vaccine because of the use of fetal cells and them being pro-life.

Complainant says that he believes his COVID-19 vaccine exemption request was denied because of his religion, because Respondent didn't even give him any reason. Respondent affirms that the decision to approve or deny the request was not based on religion and no religion was exempt or unexempt. Respondent has denied providing information or documentation on comparatives however they indicated that 48 religious accommodation requests related to the COVID-19 vaccination policy were granted and 371 were denied; Complainant has not named, nor has the investigation revealed an employee not in Complainant's protected categories that was treated better under similar circumstances. Also, Complainant did not provide Respondent with any specific reasons why his religion was related to his request for not getting a COVID-19 vaccine.

---

relevant because Respondent does not have the protected categories for the requested employees, since they do not track this information, and stated that Complainant did not reference any specific comparator.

Charge No. 2023CF0349
Page 10 of 17

## Findings and Conclusion-Count C:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent did respond to Complainant's COVID-19 vaccine religious exemption request and followed their practice when denying Complainant's request due to him not providing a reason why his request for not getting the COVID-19 vaccine was related to his religion. Complainant has not named, nor has the investigation revealed an employee not in Complainant's protected categories that was treated better under similar circumstances.

## Complainant's Allegations-Counts D & E:

Complainant alleges that he was suspended on June 14, 2022, due to his religion, Islam and his national origin, Nigeria, when Respondent removed him from service for failing to comply with their COVID-19 vaccine requirement. Complainant is not aware of others that were suspended similarly.

## Respondent's Defenses-Counts D & E:

Respondent's articulated non-discriminatory reason for removing Complainant from service on June 14, 2022, was that he had not complied with Respondent's Mandatory COVID-19 Vaccination Policy. Respondent stated that other employees were suspended or removed from service as Complainant was.

## Investigation Summary-Counts D & E:

A. **Complainant's Evidence.**

1. See Complainant's Evidence – Counts A-C.

2. Complainant stated that he was suspended on June 14, 2022 **(Exhibit P)**, for not complying with the COVID-19 vaccine requirement. When he came to work that day, his tap was locked, and he was told to go see Wright. Wright informed him that he had been given time to get vaccinated. Complainant stated that he had submitted a religious exemption request and never got any response. Wright informed him that Respondent had emailed him, but he never got it.

3. Complainant stated that after he spoke with Wright, he was removed from service, and he was told this was because he had not complied with the vaccine requirement. Complainant stated that this was like a suspension and then he never worked there again.

4. Complainant stated that he looked into this and later found out that Respondent sent his notice of denial to the wrong e-mail address. Complainant brought this to Wright's attention, but he still got removed from service. Complainant told Wright again that he could not get the vaccine because of his religion, and he submitted the paperwork again.

Wright told him, "All I can tell you is if you don't get the shot then you will be terminated." Complainant stated that he is not aware if others were suspended for the same reason because they kept this from him.

**B.     Respondent's Evidence.**

1.     See Respondent's Evidence – Counts A-C.

2.     Wright stated that Complainant did have previous disciplinary actions on his work record, but these did not lead to his suspension.

3.     Wright stated that on June 7, 2022, she talked to Complainant and made aware that Respondent's EEO office had sent a letter saying that Complainant was not in compliance with their COVID-19 vaccine mandate and that he had until June 14, 2022, to comply or he would be scheduled for a hearing **(Exhibit Q)**.

4.     Wright stated that later the same day on June 7, 2022, Complainant submitted a Report to Manager **(Exhibit R)**, informing them that he just received a denial notice dated May 2, 2022, from his work location management. In this report Complainant stated that seven (7) days were not long enough for compliance and that he would have to request more time.

5.     Wright stated that on June 14, 2022, Complainant was interviewed for the second time by the work location management **(Exhibit P)**, and at this time he still had not begun the process to comply with Respondent's Mandatory COVID-19 Vaccination Policy.

6.     Wright stated that as a result of Complainant's non-compliance, he was removed from service and referred to the General Manager for discharge consideration on June 21, 2002 **(Exhibit P)**.

7.     Wright stated that this followed Respondent's Mandatory COVID-19 Vaccination policy for all Respondent employees **(Exhibit D)**, which states, "Employees who fail to comply with this Mandatory Vaccination Policy as of November 1, 2021, maybe subject to discipline up to and including discharge."

8.     Wright stated that other employees were also suspended or remove from service similarly[3].

---

[3] In a request for further information sent to Respondent on October 27, 2023, staff requested Respondent provide names, documentation and protected categories for other employees who were suspended similarly. On November 20, 2023, Respondent denied providing any documentation on the individuals that were suspended similarly citing that they object to this request as burdensome and overly broad in scope. Respondent further affirmed that they do not track or maintain the requested information. On December 1, 2023, staff sent a second request to Respondent for this documentation and also made a phone call to Respondent's representative on December 1, 2023, and reiterated that the data on other employee suspensions was relevant and requested that Respondent provide this. Respondent's representative notified staff that Respondent would not be providing this documentation as it was not relevant because Respondent does not have the protected categories for the requested employees, since they do not track this

C. **Complainant's Rebuttal.**

1. Complainant did not provide any additional information other than what was previously identified in Complainant's section.

## Analysis-Counts D & E:

Complainant alleges that he was suspended on June 14, 2022, due to his religion, Islam and his national origin, Nigeria, when Respondent removed him from service for failing to comply with its COVID-19 vaccine requirement. Respondent's articulated non-discriminatory reason for removing Complainant from service on June 14, 2022, was that he had not complied with Respondent's Mandatory COVID-19 Vaccination Policy.

Documentation shows that on September 3, 2021, Respondent announced that all employees would be required to provide proof that they are fully vaccinated for COVID-19 by October 25, 2021. It is uncontested that Complainant submitted a religious accommodation or COVID-19 vaccine exemption request in late 2021. Complainant alleges that he never received any response to this request. Respondent affirms and documentation shows that Complainant was sent a request for further information on January 26, 2022, and he responded to this on February 2, 2022, by submitting his original request and no additional information as requested by Respondent.

Complainant alleges that he never received any response to his request. Documentation shows that Respondent did initially send Complainant's denial to the wrong e-mail. Complainant sent an e-mail inquiring about his denial on June 27, 2022, and Respondent sent the original denial and their Mandatory COVID-19 Vaccination Policy-Next Steps the same day.

Respondent stated that other employees were suspended or removed from service as Complainant was, but they denied providing documentation on this. Even so, Respondent has provided documentation showing that they spoke with Complainant multiple times about getting the COVID-19 vaccination after his religious exemption was denied, and it is uncontested that Complainant still did not get the vaccine. Respondent's Mandatory COVID-19 Vaccination policy for all Respondent employees' states, "Employees who fail to comply with this Mandatory Vaccination Policy as of November 1, 2021, maybe subject to discipline up to and including discharge."

## Findings and Conclusion-Counts D & E:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent followed their policies when suspending Complainant from service for not getting the mandatory COVID-19 vaccination and Complainant has not provided sufficient evidence to link the harm to his religion or national origin.

---

information, and the discipline in relation to non-compliance with the COVID-19 vaccination policy was separately administered by Complainant's work location.

Charge No. 2023CF0349
Page 13 of 17

## Complainant's Allegations-Counts F & G:

Complainant alleges that he was discharged on July 28, 2022, due to his religion Islam and his national origin, Nigeria, when Respondent discharged him for failing to comply with its COVID-19 vaccine requirement. Complainant stated that he is aware that a few others got discharged for the same reason including Melvin Cooper (Islam, unidentified), unidentified ("Cooper"), who was the same religion as Complainant.

## Respondent's Defenses-Counts F & G:

Respondent's articulated non-discriminatory reason for discharging Complainant on July 28, 2022, was that he still not received the COVID-19 vaccine, after his religious exemption request was denied, and he had been provided multiple extensions on time to receive the vaccine. Respondent stated that other employees were discharged similarly, and that Cooper was assigned at a different work location than Complainant.

## Investigation Summary-Counts F & G:

A. **Complainant's Evidence.**

1. See Complainant's Evidence – Counts A-E.

2. Complainant stated that on July 28, 2022, he was told to see Beck and he informed him of his discharge **(Exhibit S)**. Beck notified Complainant that he was being discharged for not complying with the COVID-19 vaccination mandate.

3. Complainant stated that he believes he was discharged because of his religion, because Respondent has always given him a hard time about things related to his religion, including when he would ask off for religious holidays.

4. Complainant stated that he believes he was discharged because of his national origin from prior incidents that he has been going through with Respondent about his religion.

5. Complainant stated that Cooper, was another Muslim brother that also got discharged.

B. **Respondent's Evidence.**

1. See Respondent's Evidence – Counts A-E.

2. Wright stated that on June 21, 2022, Complainant was interviewed again, however due to Complainant claiming he did not receive the denial notice, a Notice for Further Investigation was issued and the referral to the general manager for discharge consideration was continued to June 23, 2022.

3.      Wright stated that on June 23, 2022, Complainant was interviewed again and at this time Complainant was provided with another five (5) weeks to comply with Respondent's Mandatory Vaccination Policy **(Exhibit T)**. The referral to the General Manager for discharge consideration was also continued to July 12, 2022.

4.      Wright stated that on July 12, 2022, Complainant was not present for an interview and by the agreement between Respondent and Complainant's union, the interview was continued to July 14, 2022. The referral to the General Manager for discharge consideration was also continued to July 28, 2022.

5.      Wright stated that on July 28, 2022, Complainant was interviewed by the General Manager, Beck **(Exhibit S)**, for discharge consideration. Complainant had previously stated in his Report to Manager on June 7, 2022 **(Exhibit R)**, that seven (7) days were not enough for compliance with the vaccine mandate, and that he would have to request more time. Complainant was provided more than five (5) additional weeks, and he was still not in compliance with Respondent's Mandatory COVID-19 Vaccine Policy, so he was discharged effective July 28, 2022 **(Exhibit F)**. Respondent's Mandatory COVID-19 Vaccine Policy **(Exhibit D)**, states that, "Employees who fail to comply with this Mandatory Vaccination Policy as of November 1, 2021, may be subject to discipline up to and including discharge."

6.      Wright denied that Respondent would not be providing information or documentation on others that were discharged similarly and further denied providing documentation on Complainant's named comparative of Cooper[4].

## C.     **Complainant's Rebuttal.**

1.      Complainant did not provide any additional information other than what was previously identified in Complainant's section.

---

[4] In a request for further information sent to Respondent on October 27, 2023, staff requested Respondent provide names, documentation and protected categories for other employees who were discharged similarly, and specifically on Cooper. On November 20, 2023, staff requested Respondent provide documentation on the individuals that were discharged similarly citing that they object to this request as burdensome and overly broad in scope. Respondent further affirmed that they do not track or maintain the requested information. Respondent further denied providing documentation on Cooper citing that Cooper was at a different work location than Complainant and therefore discharged by different decision makers. On December 1, 2023, staff sent a second request to Respondent for this documentation and also made a phone call to Respondent's representative on December 1, 2023, and reiterated that the data on other employee discharges was relevant and Complainant's named comparative was most relevant and required documentation and requested that Respondent provide this. Respondent's representative notified staff that Respondent would not be providing this documentation as it was not relevant because Respondent does not have the protected categories for the requested employees, since they do not track this information, and the discipline in relation to non-compliance with the COVID-19 vaccination policy was separately administered at various work location. Staff still requested documentation on Cooper and Respondent representative said she would provide this but denied this again in her response on December 11, 2023.

Charge No. 2023CF0349
Page 15 of 17

### Analysis-Counts F & G:

Complainant alleges that he was discharged on July 28, 2022, due to his religion Islam and his national origin, Nigeria, when Respondent discharged him for failing to comply with its COVID-19 vaccine requirement. Complainant stated that he is aware that a few others got discharged for the same reason, but he did not know any names. Respondent's articulated non-discriminatory reason for discharging Complainant on July 28, 2022, was that he still had not received the COVID-19 vaccine, after his religious exemption request was denied, and he had been provided multiple extensions on time to receive the vaccine.

It is uncontested that Complainant was notified of the denial of his vaccine exemption request by June 14, 2022, at the latest. Complainant was then provided an additional five (5) weeks to receive his COVID-19 vaccine.

According to Respondent's Mandatory COVID-19 Vaccine Policy, "Employees who fail to comply with this Mandatory Vaccination Policy as of November 1, 2021, may be subject to discipline up to and including discharge." Respondent maintains that they followed their policy when discharging Complainant on July 28, 2022, and documentation shows that Complainant was allowed multiple extensions to the deadline for compliance.

Complainant stated that he believes he was discharged because of his religion, because Respondent has always given him a hard time about things related to his religion, including when he would ask off for religious holidays. Complainant stated that he believes he was discharged because of his national origin from prior incidents that he has been going through with Respondent about his religion. Complainant stated that he made Respondent aware of his religion over 10 years ago when he requested holidays off that he celebrates as a Muslim. Complainant alleges that Respondent had been aware of his religion for 10 years and then suddenly discharged him due to his religion on July 28, 2022. This does not point towards a bias against Complainant due to his religion.

Respondent denied providing any information or documentation on comparatives, however Complainant has not provided sufficient evidence to link the discharge to his religion or national origin.

### Findings and Conclusion-Counts F & G:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent granted Complainant multiple extensions to receive the COVID-19 vaccination after his religious exemption request was denied. The investigation has revealed that Respondent followed their policies when discharging Complainant for not getting the mandatory COVID-19 vaccination and Complainant has not provided sufficient evidence to link the harm to his religion or national origin.

Charge No. 2023CF0349
Page 16 of 17

**Witness List:**

**For Complainant:**
TOKUNBO BELLO
8339 S. CRANDON AVENUE
CHICAGO, IL 60617
Email: tokunbobello23@gmail.com

**For Respondent:**
SEO JANG
CHICAGO TRANSIT AUTHORITY LAW
DEPARTMENT
567 W. LAKE STREET, 6TH FLOOR
CHICAGO, IL 60661
Email: sjang@transitchicago.com

A.  Tokunbo Bello, Complainant (Islam, Nigeria)          (FFC)
(773) 844-0290

Witnesses B & C may be contacted through Respondent's Representative Seo Jang at (312) 618-2936.

B.  Valant Wright, Senior Manager of 103rd Street          (FFC)
Garage (Baptist, United States)

C.  Van Johnson, Manager of Employee Relations          (FFC)
(Christian, United States)

D.  Anthony Betts
8832 South Fairfield
Evergreen Park, IL 60805
(708) 229-1598
Staff made a call to Betts on November 14 & 15, 2023. Staff was unable to leave a message for Betts, so staff made a morning and afternoon call on both days. Staff sent a witness letter to Betts on November 14, 2023, requesting that Betts contact staff. To date, Betts has not contacted staff.

**Exhibits:**

A.  Respondent 2021 EEO Report

B.  Complainant Position Description

C.  Complainant January 27, 2022 Application

D.  Respondent's Mandatory COVID-19 Vaccination Policy

E.  Complainant's Request for Religious Exemption

F.  Complainant's Discharge Notice

G.  Bus Instructor I Training Program Posting

H.  Respondent's Discrimination, Harassment, Bullying and Retaliation Complaints Policy

STATE OF ILLINOIS     )
                         )   ss

COUNTY OF COOK     )                                        **CHARGE NO.** 2023CF0349

## AFFIDAVIT OF SERVICE

Christina P Antony, deposes and states that s/he served a copy of the attached **NOTICE OF DISMISSAL** on each person named below by depositing the same on    January 5, 2024   , in the U.S. Mailbox at 555 West Monroe Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addressed as follows:

|  |  |
|---|---|
| **For Complainant** | **For Respondent** |
| Tokunbo Bello<br>8339 S. Crandon Ave.<br>Chicago, IL 60617 | Seo Jang<br>Chicago Transit Authority Law<br>Department<br>567 W. Lake St.<br>6th Floor<br>Chicago, IL 60661 |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

_____
Christina P Antony

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Determination has been issued.