IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOKUNBO BELLO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 C 10363 |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | Judge Jeffrey I. Cummings |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Tokunbo Bello brings his amended complaint ("Complaint") alleging that defendant Chicago Transit Authority ("CTA") discriminated against him based on his religion (Muslim) and/or his national origin (Nigerian) when it: (1) failed to accommodate his request for an exemption from the CTA's COVID-19 vaccine requirement; (2) failed to promote him; and (3) terminated his employment. (Dckt. #13). Bello further asserts that the CTA's actions violated his rights under the Free Exercise Clause of the First Amendment, Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, *et seq.*) ("Title VII"), the Americans with Disabilities Act (42 U.S.C. §12101, *et seq.*) ("ADA"), the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §401) ("LMRDA"), and the Illinois Religious Freedom Restoration Act (775 ILCS 35/) ("IRFRA"). The CTA now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Bello fails to state a claim upon which relief can be granted. (Dckt. #27). For the reasons that follow, the CTA's motion is granted in part and denied in part.

**I. LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nonetheless, the "notice-pleading standard is deliberately undemanding." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (cleaned up). To this point, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it, *Berk v. Choy*, 607 U.S. \_\_\_, 2026 WL 135974, at *5 (2026), and the Rules likewise "do not require a plaintiff to plead legal theories." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). Moreover, in opposing a Rule 12(b)(6) motion, a plaintiff is free to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (cleaned up).

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiffs and accept[s] all well-pleaded factual allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (courts may examine exhibits attached to the complaint on a motion to dismiss). Furthermore, the Court construes *pro se* complaints "liberally" and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, "district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim" and an exhibit attached to the complaint controls when it "incontrovertibly contradicts the allegations in the complaint." *Esco*, 107 F.4th at 678–79 (cleaned up). Dismissal is only warranted if "no relief could be

2

granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

## II. ANALYSIS

### A. Plaintiff's Failure to Accommodate and Termination Claims

Bello alleges that the CTA violated his rights under the Free Exercise Clause of the First Amendment, Title VII, the ADA, the LMRDA, and the IRFRA when it failed to honor his request for a religious exemption from the CTA's Mandatory COVID-19 Vaccination Policy and subsequently terminated his employment. In his Complaint and his response to the CTA's motion to dismiss, (Dckt. #41), Bello alleges the following facts that relate to these claims.[1]

Bello, a practicing Muslim whose national origin is Nigeria, was a bus operator for the CTA beginning around June 2, 2001. (Dckt. #13, ¶¶8, 12, 13). He worked for the CTA for more than two decades, during which time he had perfect attendance, received positive performance evaluations, and earned multiple commendation awards based on the requests of CTA customers. (*Id.*, ¶9; Dckt. #41 at 1). On September 3, 2021, the CTA announced that all employees were required to provide proof of full COVID-19 vaccination by October 25, 2021 (the "Vaccination Policy"). (Dckt. #13 at 43). Around September 25, 2021, Bello submitted a detailed request seeking a religious exemption/accommodation to the Vaccination Policy, citing his "Islamic beliefs.". (*Id.*, ¶¶6, 26). According to Bello, he "cannot accept an experimental mRNA gene therapy drug that includes the use of aborted fetal cell line[s]" because "these heinous acts contradict [his] religious beliefs." (Dckt. #41 at 1) (cleaned up). On January 26, 2022, the CTA

---

[1] As a threshold matter, the CTA asserts that Bello should not be permitted to assert new facts or allegations in his response to their motion to dismiss because they are inconsistent with allegations in his Complaint. (Dckt. #44 at 5). However, Bello's response provides additional factual details that do not, in fact, contradict his Complaint but instead bolster his allegations that he faced discrimination while working as a CTA employee. (*See* Dckt. #13, ¶¶12–13, 15, 22, 24, 27).

3

sent plaintiff an email requesting additional information after receiving plaintiff's request for an exemption from the Vaccination Policy. (Dckt. #13 at 43). On February 2, 2022, plaintiff responded by resubmitting his initial request. (*Id.* at 44). The CTA did not grant Bello an exemption from the Vaccination Policy, and, as alleged by Bello, it failed to offer him a reasonable accommodation that would have allowed him to perform the essential functions of his position without compromising his religious beliefs. (*Id.*, ¶27).[2]

On June 14, 2022, plaintiff was removed from service because of his failure to comply with the Vaccination Policy. (*Id.*, ¶14). The CTA issued Bello a behavioral violation for failing to get vaccinated, for which he submitted a grievance to the Grievance Committee at Amalgamated Transit Union Local 241 on July 5, 2022. (*Id.*, ¶16). On July 12, 2022, he failed to appear at a hearing regarding his removal. (*Id.* at 24). On July 28, 2022, the CTA fired Bello based on his failure to comply with its Vaccination Policy. (*Id.*, ¶22). According to Bello, the CTA did not discharge similarly situated employees who were not of the Islamic faith under similar circumstances. (*Id.*).

    **1. Bello has stated a failure to accommodate and termination claim under Title VII.**

As the Seventh Circuit has recognized:

> Title VII makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' 42 U.S.C. §2000e-2(a)(1). Congress amended the statute in 1972 to clarify that 'religion' includes 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.' *Id.* §2000e(j). . . .
>
> An employee claiming that h[is] employer failed to accommodate h[is] religion must as a threshold matter show that (1) the observance, practice, or belief

---

[2] During the relevant time, the CTA granted forty-eight exemptions to its Vaccination Policy and denied 371 requests for an exemption. (Dckt. #13 at 44).

4

> conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment. . . .
>
> At the pleading stage, an employee seeking an accommodation in the form of an exemption from an employer's vaccine mandate must allege facts plausibly permitting an inference that some 'aspect[]' of the request is based on the employee's 'religious observance and practice' or 'belief.' 42 U.S.C. §2000e(j).

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1008–09 (7th Cir. 2024) (cleaned up); *Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017, 1018–20 (7th Cir. 2024). The Seventh Circuit has further "explained that scrutinizing the veracity and details of religious objections, especially at the pleading stage, 'runs counter to not only the broad language of Title VII but also the Supreme Court's repeated warnings that the law requires a hands-off approach when it comes to defining and discerning the core limits of religious exercise.'" *Fitch v. Cook Cnty. Health & Hosp. Sys.*, 1:23-CV-16945, 2025 WL 213817, at *3 (N.D.Ill. Jan. 16, 2025), *quoting Bube*, 108 F.4th at 1020.

Bello, particularly in view of his status as a *pro se* litigant, has met the standard for pleading a Title VII failure to accommodate claim by alleging that his request for an exemption from the Vaccination Policy was based on his religious belief—in particular, that his religion bars him from accepting an mRNA gene therapy drug that includes the use of an aborted fetal cell line. *See, e.g.*, *Passarella*, 108 F.4th at 1009; *Bube*, 108 F.4th at 1018–20; *Morris v. City of Chicago*, No. 24 CV 1431, 2025 WL 2410370, at *5 (N.D.Ill. Aug. 20, 2025) (plaintiff who alleged that his religion is "inconsistent with the use of fetal cell lines in producing vaccines" properly pled a failure to accommodate claim); *Baumgartner v. City of Chicago*, 759 F.Supp.3d 868, 873, 875–76 (N.D.Ill. 2024) (same); *Harris v. Cook Cnty.*, No. 24 CV 957, 2024 WL 4818745, at *2 (N.D.Ill. Nov. 18, 2024) (plaintiff properly pled a failure to accommodate claim

5

by alleging that her religion and the religious principle embodied in a scripture verse formed the basis of her objection to the vaccine).

Bello has likewise properly alleged that his religious observation and beliefs—which bar him from ingesting a drug that uses an aborted fetal cell line and thereby caused him to refuse the COVID-19 vaccine—resulted in his discharge because he was terminated based on his failure to comply with the Vaccination Policy. *See, e.g., Passarella*, 108 F.4th at 1009–12; *Bube*, 108 F.4th at 1019–21; *Fitch*, 2025 WL 213817, at *3 (plaintiff plausibly alleged that her religious observation or practice was the basis of her discharge where defendant failed to implement the offered accommodation due to her religious beliefs).

### 2. Bello has stated a claim under the IRFRA.

Bello further alleges that the CTA's failure to honor his request for an exemption from its Vaccination Policy violated the IRFRA, which provides that the

> Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

775 ILCS 35/15. "In the IRFRA context, 'the hallmark of a substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's free exercise of religious convictions or complying with the government regulation.'" *Baumgartner*, 759 F.Supp.3d at 879–80, *quoting Diggs v. Snyder*, 775 N.E.2d 40, 45 (Ill.App.Ct. 2002); *see also World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009) (finding that whether a burden is substantial is ordinarily an issue of fact). "[A] plaintiff may also show a substantial burden when 'the state conditions receipt of an important benefit upon conduct proscribed by a religious faith . . . thereby putting substantial pressure on an adherent to modify

his behavior and to violate his beliefs.'" *Id.* at 880, *quoting Thomas v. Review Bd. of Indiana Emp't Sec. Division*, 450 U.S. 707, 717–18 (1981).

Here, Bello has alleged that the CTA's wrongful refusal to grant him an exemption to the Vaccination Policy effectively forced him to choose between abandoning his religious convictions (by taking the vaccine) or losing his job. As such, Bello has alleged an IRFRA claim. *Id.* ("Because Plaintiff has alleged sufficient facts to show the Attestation Form amounted to a coercive tactic, which forced him to choose between abandoning his religious convictions (by taking the vaccine) he has plead sufficient facts to make out an IRFRA claim."). Finally, contrary to the CTA's contention, the fact that Bello did not mention the IRFRA in his Complaint is of no moment because he was not required to plead his legal theories. *Vidimos*, 99 F.3d at 222.

**3. Bello has failed to state a claim under the Free Exercise Clause.**

Bello asserts that the CTA's actions violated the Free Exercise Clause of the First Amendment, which provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. CONST., Amend. I. "To state a claim that the Free Exercise Clause of the First Amendment has been violated, a plaintiff must plausibly allege that a government entity burdened a sincere religious practice pursuant to a policy that was not neutral or generally applicable." *Troogstad v. City of Chicago*, No. 25-1575, 2025 WL 3524720, at *2 (7th Cir. Dec. 9, 2025). Although Bello has successfully pleaded "some facts about [his] religious beliefs and how those beliefs conflict with the vaccine requirement," (*id.*), he has failed to allege that the Vaccination Policy is not neutral or generally applicable.

"To be neutral, a law may not single out religion or religious practices." *Does 1–6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021). Here, the Vaccination Policy is facially neutral in that it does not discriminate against Bello's religion (or any other) on its face. *See Church of the*

7

*Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) ("A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."). Moreover, the Vaccination Policy does not violate the neutrality principle by "target[ing] religious conduct for distinctive treatment." *Id.* at 534. Furthermore, Bello's Complaint, which alleges that all CTA employees would need to provide proof of full COVID-19 vaccination, establishes that the Vaccination Policy is generally applicable. *See, e.g.*, *Cisneroz v. City of Chicago*, No. 21-cv-5818, 2021 WL 5630778, at *3 (N.D.Ill. Dec. 1, 2021) ("On its face, the City's vaccination policy is a neutral law of generally applicability because it equally applies to all City employees, regardless of religious belief or affiliation."). Finally, the Vaccination Policy has the requisite rational relationship to a legitimate state interest that a neutral policy of general applicability needs to survive scrutiny. *Id.* ("[T]he City's vaccine policy has a rational basis due to the severity of the COVID-19 pandemic, including the newly-discovered omicron variant, and the need to prevent the spread of the disease.") (citing cases).

**4. The CTA is not amenable to liability under the LMRDA.**

Although Bello attempts to allege a claim against the CTA for violating his rights under Section 101(a)(1) of the LMRDA,[3] the LMRDA was "meant to prevent 'abuses of power by union leadership.'" *Ward v. Int'l All. of Theatrical Stage Emps., IATSE Local 480*, 773 F.Supp.3d 1262, 1269 (D.N.M. 2025), *quoting Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 352 (1989). Consequently, the LMRDA "subjects unions to liability for practices violative of individual members' rights" and it does not provide for a cause of action against employers such as the CTA. *Aguirre v. Auto. Teamsters*, 633 F.2d 168, 172 (9th Cir. 1980); *Plano v. United*

---

[3] This provision grants every member of a labor organization with "equal rights and privileges . . . to participate in the deliberations and voting upon the business" of union membership meetings. 29 U.S.C. §411(a)(1).

*Auto Workers, Local 890*, No. 24-cv-01768, 2025 WL 2767288, at *3 (N.D.Ill. Sep. 26, 2025) ("[T]he LMRDA does not include a right to be treated equally by an employer, as the Act pertains to intra-union relations."). Accordingly, Bello's LMRDA claim against the CTA is dismissed with prejudice.

### 5. The ADA does not provide for accommodation based upon religion.

Bello further alleges that the CTA violated the ADA by failing to accommodate his request for a religious exemption from the Vaccination Policy. (Dckt. #13, ¶19). However, the ADA provides accommodation based upon disability, and not upon religion. Bello does not allege that he has a disability, and he did not allege disability discrimination in his charge of discrimination. (*See Id.* at 27). The CTA pointed out these flaws in its brief supporting its motion to dismiss and Bello's failure to respond to the CTA's argument on this point constitutes his abandonment of any claim under the ADA. *See, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Co.*, 834 F.3d 128, 142–44 (2d Cir. 2016); *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 374 & n.2 (7th Cir. 2020); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Accordingly, Bello's purported claim under the ADA is dismissed with prejudice.

### B. Plaintiff's Failure to Promote Claim

Finally, Bello alleges that the CTA violated Title VII because they failed to promote him to the Bus Instructor-I Training position based on his Muslim faith and/or his Nigerian national origin. (Dckt. #13, ¶¶12–13). It is well-settled that "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims," *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008), and the Court "is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim." *Slaney*, 244 F.3d at 597 (7th Cir. 2001). "A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in

9

order to prevail on the merits." *Tamayo*, 526 F.3d at 1086 (citing *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006) (cleaned up)).

Here, Bello has pled himself out of court by alleging facts within his Complaint that constitute an impenetrable bar to his recovery on this promotion claim. In particular, in his Complaint and the attached exhibits, Bello alleges that he applied for a promotion to the position of CTA Bus Instructor-I Training position on January 21, 2022. (*Id.*, ¶10). The CTA's job posting stated that only CTA employees who were "currently qualified as Bus Service Supervisor, appointed Bus Clerk, actively participating as a Pool Bus Service Supervisor or School Bus Clerk" were "[e]ligible to [a]pply" for the Bus Instructor-I Training position. (*Id.* at 39). Bello agreed in proceedings before the Illinois Human Rights Commission that he did not hold any of these qualifying positions at the time he applied for the promotion. (*Id.*). The CTA did not consider or respond to Bello's application for the position. (*Id.*, ¶11).

To prevail on the merits of his promotion claim, Bello would need to show, among other things, that he was qualified for the Bus Instructor-I Training position. *See, e.g.*, *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016). That would require "contradict[ing] the complaint"—specifically, the allegation that Bello was not qualified for the Bus Instructor-I position because he was not currently qualified in one of the prerequisite positions. *Tamayo*, 526 F.3d at 1086. "Although our pleading rules . . . permit inconsistencies in legal theories," Bello's own allegations make it not merely improbable, but impossible, that he was qualified for the position he sought. *Id.* (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999)). Furthermore, Bello has abandoned his promotion claim by failing to address the CTA's arguments for its dismissal in his response. *Kovaco*, 834 F.3d at 142–44; *Robertson*, 949 F.3d at

374 & n.2; *Alioto*, 651 F.3d at 721.  Accordingly, Bello's Title VII failure to promote claim is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss, (Dckt. #27).  Defendant CTA is ordered to answer remaining non-dismissed claims in plaintiff's Complaint by March 3, 2026.

**DATE: February 10, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**

11